UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

Tamara H. Potkay,

    Plaintiff,

v.

                                            Civil Action No. 2014-CV-00181

David Ament, individually and in his
official capacity, and the City of New Berlin,

    Defendants.

---

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO HOLD DEFENDANTS IN CONTEMPT OR IN THE ALTERNATIVE TO SUPPLEMENT THE COURT'S INJUNCTIVE ORDER OF JULY 24, 2014

---

Introduction

On February 25, 2014 the parties to this lawsuit agreed "that [defendants] will resume [plaintiff's] pay and employee benefits until the hearing on March 13 and [defendants] will not do any reduction in force or replacement until after the hearing on March 13." (Docket 9.) At the close of the hearing on March 13 Mr. Gunta denied that that agreement had occurred. (Docket 15, transcript of March 13 preliminary injunction hearing at p. 52, lines 8-22.) The Court continued the status quo of pay and benefits to Ms. Potkay until the resumed hearing on March 26. (Docket 15, transcript of March 13 preliminary injunction hearing at p. 52, line 23 to p. 53, line 16.) The Court did not rescind the agreement and minute order of February 25, 2014. (Docket 16.) At the close of hearing on March 26, the Court made clear that it was preparing a decision in favor of plaintiff, and "[t]hat the city should not take any further steps with regard to

1

any reorganization...." (Docket 18 and Docket 21, transcript of March 26 preliminary injunction hearing at p. 112, lines 14-15.) What has been done to Ms. Potkay, her position as Director of Human Resources, and her employment since March 26 in violation of this Court's ORDER of July 24 is the focus of this MOTION.

Statement of Facts

We incorporate by reference this Court's FINDINGS OF FACT at pp. 2-11 of its DECISION AND ORDER of July 24, 2014. (Hereinafter "D & O".) We further incorporate by reference ¶¶1-24 of the SECOND AFFIDAVIT OF TAMARA H. POTKAY and Exhibits 1 through 15 of that SECOND AFFIDAVIT dated October 2, 2014. It is important for the reader to digest the SECOND AFFIDAVIT (hereinafter "2nd Aff.") as a predicate to the remainder of this MEMORANDUM.

During the time between the close of the second preliminary injunction hearing on March 26 and this Court's D & O of July 24, and despite this Court's continuing directive on March 26 concerning the parties status-quo agreement of February 25 that "the city should not take any further steps with regard to any reorganization" (Docket 18 and Docket 21, transcript of March 26 preliminary injunction hearing), several further steps were taken by the City with regard to the position of Human Resources Director.

- The City outsourced collective bargaining duties allocated by civil service job description to duties of the Human Resources Director to the law firm of its special labor counsel, Mary Hubacher, without notice to or consultation with the Human Resources Director, the Civil Service Commission or the Common Council. (Potkay 2nd Aff. ¶2.)

2

- On or about May 6 Alderman Harenda drafted and sent to Mayor Ament and the Council a Memorandum and proposed Resolution affirming and ratifying the mayoral decision of January 24 terminating Ms. Potkay's employment as Human Resources Director. Neither the Civil Service Commission nor the Human Resources Director was consulted concerning this Memorandum and proposed Resolution. (Potkay 2nd Aff. ¶3 and Ex. 1.)
- On or about May 13 the Common Council placed on the agenda and voted to go into closed session purportedly for the purpose of legal consultation concerning Ms. Potkay's CLAIM of February 19. Immediately following the closed session and without any action on Ms. Potkay's CLAIM of February 19 the Council passed as Resolution 10-14 Aldermen Harenda's proposed draft affirming and ratifying the mayoral decisions of January 24 terminating Ms. Potkay's employment as Human Resources Director. Neither the Civil Service Commission nor the Human Resources Director was consulted concerning Resolution 14-10. (Potkay 2nd Aff. ¶4 & Ex. 2.) By utilizing a closed session purportedly to consider Ms. Potkay's CLAIM and instead passing Resolution 14-10 the Common Council avoided public notice, hearing and debate concerning the termination of Ms. Potkay's employment. It also avoided a discussion and debate about the assertion of executive power that the Mayor could act alone to "reorganize" civil service department head positions. And, of course, it got to confer in secret about all matters concerning Ms. Potkay and her employment and position without any citizen involvement.

3

- Ms. Potkay did not find out about this behavior by the Council until July 30. Despite the knowledge of the Mayor and Council of the passage of Resolution 14-10, and despite the knowledge of the Mayor and Council of this Court's directive of March 26 for the City to take no further steps with regard to any reorganization, Resolution 14-10 was not brought to the attention of this Court between May 13 and July 24. (Potkay 2nd Aff. ¶5.)
- On or about June 15 Ms. Ellen White, a clerk in the Human Resources Department, was terminated without consultation with either Ms. Potkay or the Civil Service Commission. (Potkay 2nd Aff. ¶6.)

On July 24 this Court entered its D & O granting Ms. Potkay temporary restraining and preliminary injunctive relief and upon proof of bond security restoring her to her position as Director of Human Resources, but not preventing "future reorganization or discipline." The Court premised its ORDER on its DECISION "as set forth above." (D & O at p. 29.) Ms. Potkay provided cash security and proof thereof in lieu of bond with the Clerk of this Court on July 28, 2014. (Docket 24.) Because the Court's ORDER referred to "return to her position" and "immediately restore Potkay to her position as Director of Human Resources," Ms. Potkay informed the Mayor of her intention to return to work at City Hall on Tuesday the 29th or Wednesday the 30th of July to carry out her duties in accord with her position description as set forth in Exhibit 1 to her original AFFIDAVIT of February 19. (Potkay 2nd Aff. ¶7.) There then ensued a series of actions between July 28 and the present by the Mayor and the Council which have nearly completely crippled Ms. Potkay's restoration to her position and ability to perform her

4

duties. Those actions are described in Ms. Potkay's 2nd Aff. at ¶¶ 8-16, 18-20, & 23 and Exhibits 4-13, which we summarize as follows.

- Ms. Potkay was forbidden by the Mayor to return to work at City Hall. (Potkay 2nd Aff. ¶ 8 & Ex. 4.)

- A meeting of the Common Council was hastily conducted on July 29 with the same kind of secret session as had occurred on May 13, and Resolution 14-10 was supplemented after the session by Resolution 14-19, which re-affirms the Mayor's authority to "reorganize" Ms. Potkay's position. Neither the Civil Service Commission nor the Director of Human Resources was consulted. There was no opportunity for public notice or participation. (Potkay 2nd Aff. ¶ 9 & Ex. 5.) Resolution 14-19 continues the Mayor's sole direction of the "reorganization" of the position of Director of Human Resources. (Potkay 2nd Aff. ¶ 10 & Ex. 6.)

- Following the June 29 Common Council secret session the Mayor has limited Ms. Potkay to the development of written materials, confined her to telecommuting work exclusively with him, forbidden her from returning to City Hall or other City premises, forbidden her contact with other City employees, isolated her at home, and cut off her duties, even as described in Chapter 11 of the New Berlin Civil Service Municipal Code ("NBMC"), all without any opportunity for her to provide her professional opinion as the Director of Human Resources or for any input from the New Berlin Civil Service Commission. (Potkay 2nd Aff. ¶¶ 11 & 12 and Exs. 7 & 8.)

5

- These actions were taken despite express objection by Ms. Potkay and her attorney that they were in violation of this Court's D & O of July 24. (Potkay 2nd Aff. ¶¶ 13 & 15 and Exs. 9 & 11.)

- On July 30 Mayor Ament announced to all City employees that despite this Court's D & O "nothing has changed," Ms. Potkay has no supervisory authority, no City employees are to communicate with her, and she will not be returning to City Hall. (Potkay 2nd Aff. ¶ 14 and Ex. 10.)

- On August 1 Mayor Ament informed Ms. Potkay by correspondence of the exclusive system of communication confining her to work at home and cutting her off from communication with all other City employees. (Potkay 2nd Aff. ¶ 16 and Ex. 12.)

- The Mayor's isolation of Ms. Potkay is costly, inefficient and extreme, even including disallowing Ms. Potkay supplies to do her work and requiring her to use Fire Department stationery in order to avoid any document that might identify her as the Director of Human Resources. (Potkay 2nd Aff. ¶¶ 18 & 19 and Exs. 7, 10, 12 and 13.)

- Under the circumstances dictated by Mayor Ament from and after this Court's D & O of July 24 the position of Director of Human Resources has been effectively crippled, and the performance of duties of either her original job description in force on January, 2014 or the modified job description of July 29, 2014 have been made impossible. (Potkay 2nd Aff. ¶ 20.)

6

- Ms. Potkay believes based on her experience that the position of Director of Human Resources has been so diminished as to be set up for elimination in the 2015 budget. (Potkay 2nd Aff. ¶ 20.)
- A consulting contract has been executed by the City assessing the position of Director of Human Resources for the purpose of re-doing the Final Springstead Report of December, 2012 without consultation with Ms. Potkay or the Civil Service Commission. Despite asking the Mayor for opportunity to appear before the Common Council concerning this contract, Ms. Potkay was told that her input "was neither required nor necessary." (Potkay 2nd Aff. ¶¶ 20 & 21 and Ex. 14.)
- Mayor Ament's proposed 2015 EXECUTIVE BUDGET dated September 16, 2014 eliminates the position of Director of Human Resources. (Potkay 2nd Aff. ¶ 22 and Ex. 15.)

None of the actions taken by the Mayor and the Common Council with respect to Ms. Potkay's employment and the position of Director of Human Resources since January 24 has involved any New Berlin Civil Service Commission participation or any consultation with Ms. Potkay professionally in her official capacity or any public substantive Common Council committee hearing process or any passage of any ordinance modifying the applicable civil service provisions of the City of New Berlin Municipal Code. Council resolutions concerning the position of Director of Human Resources and Ms. Potkay's employment between January 24 and the present have been only "affirmations", "re-affirmations", or "ratifications" by the Common Council of decisions allocated exclusively to and made by the Mayor. They have followed closed sessions, the closing of which has been said to have been justified as reviewing Ms. Potkay's CLAIM as a matter in litigation, even though Resolutions 14-10 and 14-19

7

resulting from the closed sessions and the ensuing modifications to the position description and duties of the Director of Human Resources and Ms. Potkay's employment are civil service matters and do not constitute decisions concerning Ms. Potkay's CLAIM or this lawsuit as defined in §19.85(1)(g), Wis. Stats.

Ms. Potkay believes that the foregoing course of conduct by Mayor Ament and the City of New Berlin constitute continued bad faith retaliation against her for having exercised her rights and duties as described in her initial AFFIDAVIT of February 19 and for having successfully pursued this lawsuit to the point of this Court's D & O of July 24. That Ms. Potkay has not truly ever been "laid off" is further evidenced by the facts that she has not since February 19 been notified of layoff or told of any recall or reinstatement rights that she might have or made aware of the vacancy of the civil service position of Deputy City Clerk as of September 14, a position since filled without notice to Ms. Potkay. (Potkay 2nd Aff. ¶17.)

## Argument

I.  <u>Denial of Civil Service and Constitutional Due Process and Further Diminishment of Ms. Potkay's Property Interest in the Position of the Human Resources Director Has Continued.</u>

It is undisputed that Ms. Potkay has a property interest in her job. That job is described in Exhibit 1 to Ms. Potkay's initial AFFIDAVIT. It is that job to which she was appointed by the Mayor and confirmed by the Common Council. No due process has been afforded to Ms. Potkay pursuant to the NBMC Chapter 11 procedures. This Court left room to the defendants to proceed on the basis of discipline against Ms. Potkay if they followed NBMC Chapter 11 due process procedures. (D & O at pp. 27 and 29.) Defendants have not done that. However, despite the Court's directive at the close of the

8

March 26, 2014 hearing "that the city should not take any further steps with regard to any reorganization," we know that in mid-April the defendants transferred Ms. Potkay's collective bargaining duties with respect to New Berlin's Fire Department employees and union to Ms. Hubacher's law firm, the City's outside labor legal counsel in this case. We also know that on June 15 the defendants diminished the Human Resources Department's work force by terminating Ms. Ellen White, a clerk in that Department. We know most significantly that between May 6 and 13, 2014 by Memorandum and closed session the Common Council ratified the very "reorganization" termination of Ms. Potkay's employment by the Mayor that this Court had prohibited by its comment on March 26 at the close of the hearing. Furthermore, the defendants did not notify this Court of its decision to do so, even though it was unmistakable from the Court's remarks at close of the March 26 hearing that the Court was going to enjoin the defendants and did not want any reorganization of Ms. Potkay's job while its decision was pending. (Docket 18 and Docket 21, transcript of preliminary injunction hearing at pp. 111-114.) Thus, even before this Court ruled on July 24, Ms. Potkay's position had been further "reorganized" and diminished without due process of law.

From the moment of this Court's D & O of July 24 that diminishment has proceeded further to the present point of near total abolition of the position by virtue of the decisions of Mayor Ament, as affirmed and ratified by the Common Council. These actions are described in detail in Ms. Potkay's 2nd Aff. and need not be repeated here. Suffice it to say that Ms. Potkay is a workday prisoner in her home confined to paper assignments by the Mayor without any authority as the Human Resources Director, forbidden contact with any other New Berlin employees and denied any feedback on any

of her work by the Mayor. All these actions both before and after July 24 have been effectuated by the Mayor with ratification as to certain of them by the Council without consultation with the Civil Service Commission or with Ms. Potkay in her official capacity as Director of Human Resources and without any NBMC Chapter 11 due process of law. Without more this is an egregious violation of both Wisconsin civil service law and Fourteenth Amendment due process law as described and discussed in this Court's D & O of July 24.

II. <u>Continued and Aggravated Bad Faith by the Mayor Ratified by the Common Council Has Occurred, Notwithstanding the Court's D & O of July 24</u>.

Defendants have not denied and will not deny that Ms. Potkay has not been provided the cause, discipline and dismissal standards and processes guaranteed by §§11-11 and 11-12 of NBMC as a matter of Wisconsin civil service law, e.g., <u>Castelaz v. City of Milwaukee</u>, 94 Wis. 2d 513, 521-22 (1980), overruled on other grounds, <u>Casteel v. Vaade</u>, 167 Wis. 2d 1, 21 n. 18 (1992) [administrative exhaustion requirement impermissible under the Supremacy Clause in §1983 cases], <u>Bahr v. State of Wisconsin Investment Board</u>, 186 Wis. 2d 379, 400-04 (Ct. App. 1994), and by the Fourteen Amendment's due process clause as a matter of federal constitutional law. E.g., <u>Misek v. City of Chicago</u>, 783 F.2d 98, 100-01 (7th Cir. 1993), appeal dismissed upon remand and review, 978 F.2d 1261, 1993 U.S. App. LEXIS 491 (7th Cir. 1993); <u>Jessen v. Village of Lyndon Station</u>, 519 F. Supp. 1183 (W.D. Wis. 1981). Instead they will argue, as they already have, that those protections are beside the point because this is a good faith reorganization of position exempt from the cause, discipline and dismissal requirements of Wisconsin civil service law and the due process requirements of the Fourteenth Amendment. (D & O at p. 15.)

10

However, we are not writing on a blank slate with respect to the good faith reorganization defense. This Court already elaborated the good faith requirements of that defense and applied them to the defendants' behaviors, as the Court understood those behaviors to be on the basis of the defendants' representations to the Court for the period January 24 to July 24 and found the defendants for several reasons to have engaged in bad faith. (D & O at pp. 15-24 and cases cited and discussed.)

Focusing just on the period from the close of the hearing on March 26 to the Court's decision on July 24 the bad faith assessment by the Court would only have deepened had the Court known of the defendants' further behaviors in spinning off the collective bargaining duties of Ms. Potkay's job to its special outside labor counsel's law firm (Potkay 2nd Aff. ¶2), in terminating the employment of a clerk in the Human Resources office (Potkay 2nd Aff. ¶6), and in ratifying the Mayor's decision of January 24 to terminate Ms. Potkay on May 13 (Potkay 2nd Aff. ¶¶3, 4, and 5), all in contravention of the Court's directive of March 26 at the close of hearing that the defendants take no further steps to reorganize the position of Human Resources Director (Docket 18 and 21, transcript of March 26 preliminary injunction hearing at p. 112, lines 14-15), all done without notice to this Court, despite defendants' knowledge of the Court's work on its pending decision (Potkay 2nd Aff. ¶¶2-6; Docket 18 & 21 at pp. 111-114), and all done without notice to or input from Ms. Potkay in her official capacity as the Director of Human Resources and the Civil Service Commission (Potkay 2nd Aff. ¶¶2-6, 23), and in the instance of the Common Council's May 13 action ratifying the Mayor's termination of Ms. Potkay's employment, all done in secret session of the Council under cover of supposedly considering Ms. Potkay's CLAIM (Potkay 2nd Aff. ¶

11

4 and Ex. 2) so as to avoid substantive legislative consideration and citizen, Potkay, and Civil Service knowledge, involvement and participation. (Potkay 2nd Aff. ¶¶2-6, 23 and 24 and Exs. 1-3.)

Focusing further on the period immediately following the Court's D & O from July 24 to August 1 when the effective abolition of Ms. Potkay's position as Human Resources Director and employment was cemented into place, the defendants' bad faith is even more apparent. It was directly addressed to defendants' counsel of record, Attys. Gunta and Blum, by Ms. Potkay's attorney's effort in writing on July 29 to deter the defendants from extending their bad faith as described by this Court in its July 24 D & O (Docket 23 & Potkay 2nd Aff. ¶13 and Ex. 9):

> Gentlemen:
>
> It has come to my attention that efforts are underway by your clients, Mayor Ament and the City of New Berlin, the defendants bound by Judge Clevert's injunction of July 24, 2014, to thwart Human Resources Director Potkay's immediate return to work on Wednesday morning July 30 and to defy the Court's ORDER.
>
> From page 14 to page 23 of his decision Judge Clevert elaborates the many reasons why Ms. Potkay's prior termination was a bad faith action by your clients. Those reasons are now equally applicable to your clients' behaviors since July 24th and planned behavior this evening. [July 29th.]
>
> Starting on the 25th of July and continuing to date Attorney Gunta has evaded any direct conversation with me about Ms. Potkay's return to work. After we posted the required security and announced to Mr. Gunta that Ms. Potkay was reporting to work tomorrow morning, the Mayor ordered her not to report. That is defiance of Judge Clevert's ORDER and places the defendants in contempt of court. The Mayor and Council announced a legally dubious closed session for Wednesday evening and then abruptly accelerated it to Tuesday evening. The closed session announced that it would be followed by "re-affirmation" of the Mayor's job descriptions for City Clerk and Director of Human Resources. That subject matter exceeds the announced reason for the closed session,

violates state law, and constitutes a prospective further contempt of Judge Clevert's ORDER.

That the Mayor and the City by its Council now apparently plan to act together to deprive Ms. Potkay of her position and defy the Court's ORDER does not avoid their obvious bad faith. (Dec. 15-17 & n.3.) Ms. Potkay's prospective second termination (1) avoids civil service removal processes (Dec. 13), (2) avoids civil service layoff requirements and procedures (Dec. 14, 19), (3) is "illegitimate" within the meaning of the cases cited and discussed by the Court (Dec. 15-17 & n.3), (4) continues to be an attack on one person rather than a considered reorganization following an open deliberative Council Committee and Civil Service Commission process involving the Human Resources Director and other relevant professional advisers (Dec. 15-17, 21-22), (5) is not part of a broader City legislative agenda to accomplish a more effective government function (Dec. 20), (6) continues the Mayor's hostility to Ms. Potkay personally and enlists the Council in that hostility (Dec. 20-21), (7) once again exposes the Mayor's credibility failings and at the same time compromises the credibility of the entire Council (Dec. 23), and (8) again flaunts the proper layoff, recall and reinstatement provisions of the civil service code. (Dec. 23-24.)

To no avail. Defendants proceeded from July 24 to the present date to eviscerate the position of Human Resources Director and to eliminate almost entirely Ms. Potkay's employment. This course of action is described in detail in Ms. Potkay's SECOND AFFIDAVIT at ¶ 8 and Ex. 4, ¶ 9 and Ex. 5, ¶ 10 and Ex. 6, ¶ 11 and Ex. 7, ¶ 12 and Ex. 8, ¶ 14 and Ex. 10, ¶ 16 & Ex. 12, ¶ 18, ¶ 19 & Ex. 13, ¶ 20, ¶ 21, ¶ 23 and ¶ 24 and has been summarized <u>supra</u> at pp. 5-7 of this MEMORANDUM. This course of bad faith behavior makes clear that not reorganization but termination of Ms. Potkay is what the defendants have done; it is Ms. Potkay's person that is the aim of their efforts, not a good faith reorganization of the Human Resources Department. In the words announced by Mayor Ament to all the employees of the City except Ms. Potkay upon his decision of July 30 to obstruct this Court's D & O, block Ms. Potkay's return to work at City Hall, and nullify her employment: "…<u>nothing has changed</u> with respect to the reorganization

13

of the Human Resources Department...." (Potkay 2nd Aff. ¶14 and Ex. 10.) [Emphasis supplied.]

The Mayor might as well have said "See, I'm in charge; no court order is going to stop me from what I did in January and from continuing this ouster of Tami Potkay; she's not coming back to City Hall, has no portfolio, no authority, and is confined to home from which she can speak only to me and not to any of you." This behavior has been his, and the Common Council has simply deferred to it, asserting that it is only re-affirming and ratifying the Mayor's exclusive executive authority and decisions concerning the position of Human Resources Director and the employment of Ms. Potkay. (Potkay 2nd Aff. ¶¶ 3, 4, 8-12, 14-16, 18-20 & 23 and Exs. 1-8, 10, and 12.)

It is likewise clear that the Mayor intends to pursue the complete elimination of the position of Director of Human Resources and the employment of Ms. Potkay. He has commissioned an assessment of the Department of Human Resources from which he has excluded Ms. Potkay and the Civil Service Commission, and he has submitted his 2015 Executive Budget eliminating the Position of Director of Human Resources. (Potkay 2nd Aff. ¶¶ 21, 22, 23 & 24 and Exs. 14 and 15.) It is notable that the Mayor's 2015 Executive Budget highlights the elimination of the Human Resources Director position and mentions not a single other position elimination in the New Berlin government. (Potkay 2nd Aff. ¶ 22 and Ex. 15.)

III.  There Is No Avoidance of Bad Faith by Either The Common Council's Actions or The Modified Position Description for the Director of Human Resources Position.

We anticipate that defendants will seek to avoid contempt by arguing their affirmative defense[1] that because this Court denied plaintiff's request for an injunction against future reorganization of Human Resources and declined to "...direct what duties (if any) must be performed by the Human Resources Director as this case proceeds...[,]" (D & O at p. 27), they may permissibly take the actions that they have. They will also argue that the Council has now taken legislative action allowing this course of behavior by the defendants. However, the Court cautioned the defendants about the requirements of good faith to legitimate any such actions, (D & O at pp. 27-28), granted Ms. Potkay's requested preliminary injunction reinstatement relief, and ordered defendants to "...immediately restore Potkay to her position as Director of Human Resources pending further proceedings in this court." (Id. at p. 29.) It defies reality and wrenches out of the context of the entire reasoning of the Court and its citation of and discussion concerning the cases of Misek, Campana, Thein, Castelaz, Bahr, Felde, and Bellaver, (id. D & O at pp. 15-18 & n. 3), that the Court was really authorizing the near nullification of the position of Director of Human Resources and the effective elimination of Ms. Potkay's employment that has occurred here.

---

[1] There is no doubt that an exemption from a statutory or constitutional command falls within Fed. R. Civ. P. 8(c)(1)'s requirements as an "avoidance or affirmative defense." E.g., Suiter v. Mitchell Motor Coach Sales, Inc., 151 F.3d 1275, 1279 (10th Cir. 1998) ["[a] claim of exemption is an affirmative defense"]; Brennan v. Valley Towing Co., 515 F.2d 100, 104 (9th Cir. 1975) [same]; Stern v. American Bankshares Corp., 429 F. Supp. 818, 827 (E.D. Wis. 1977) [same]; see In Re Zweibon, 565 F.2d 742, 746-47 & n. 15 (D.C. Cir. 1977) ["good faith" avoidance is an affirmative defense]; Gomez v. Toledo, 446 U.S. 635, 640 (1980) [same, as applied to qualified immunity].

15

First, unlike the legislative actions referenced by the decisions in Thein, Campana and Felde, the Common Council here acted solely by resolutions that did not modify any provision of the civil service code, NBMC Chapter 11, but instead simply recognized what it claimed to be the Mayor's exclusive authority, which it re-affirmed and ratified. A resolution cannot under Wisconsin law accomplish what is required to be done by ordinance. E.g., WERC v. Teamsters Local No. 563, 75 Wis. 2d 602, 613 (1977). The NBMC provides by ordinance for the office and duties of the Director of Human Resources, §11-2(4)(a)(b)(c) and (d), and for the appointment, treatment and removal of classified civil service personnel such as Ms. Potkay. NBMC §11-4 c.(1) and (2), referencing §11-7 requires appointment by the Mayor and confirmation by the Council, so that removal would have to be by identical action. The Director of Human Resources is such a position. NBMC §§11-5 and 11-7B.

Second, it was not just a technicality or unintentional action that the Council acted by resolution in Nos. 14-10 of May 13 and 14-19 of July 29. They did so in secret sessions that were supposedly necessary for legal advice concerning Ms. Potkay's CLAIM. (Potkay 2nd Aff. ¶4 and Ex. 2; ¶ 9 and Ex. 5.) However, the secret sessions resulted in the resolutions, not in any consideration of this case. (Ibid.) Wisconsin law and public policy strongly favor open meetings, §19.81(1)(2), Wis. Stats., so much so that a presumption of openness attends all matters, unless specifically exempted, State ex rel. Newspapers Inc. v. Showers, 135 Wis. 2d 77, 97 (1987), and specific exemptions are to be invoked narrowly and sparingly, State ex rel. Lynch v. Conta, 71 Wis. 2d 662, 678 (1976), while openness is to be

16

liberally favored and required. §19.81(4), Wis. Stats. State ex rel. Lawton v. Town of Barton, 278 Wis. 2d 388 (Ct. App. 2005). State ex rel. Citizens for Responsible Development v. City of Milton, 300 Wis. 2d 649 (Ct. App. 2007) is exemplary, a case in which §19.85 (1) (e) was strictly construed to require open discussion of development negotiations. A discussion openly of the Council's desire here to ratify a broad conception of mayoral authority exclusively to reorganize civil service protected departmental head positions and endorse the termination of the long-time Director of Human Resources would have forced into the light of day the profoundly important issues surrounding the Mayor's actions.

Third, Ms. Potkay's contentions do not offend the principle enunciated and explained in Campana and Felde that in assessing good faith there must be no inquiry into legislative motive. As we have noted, the Council did not legislate by ordinance any change to NBMC Chapter 11. Further, even by resolution it proclaimed no decisional authority for itself, opining only that it was re-affirming and ratifying both the broad claim to executive authority by the Mayor and his decisions regarding the position of Director of Human Resources and the employment of Ms. Potkay.

Fourth, a proper respect for this Court's comments about the position description of Director of Human Resources and the defendants' prerogatives concerning that description and Ms. Potkay's employment must place that comment in its context of describing a good-faith reorganizing effort. The Court was telling the defendants, we submit, that if they had wanted to re-define and re-

17

organize the human resources function in New Berlin, they could have done so by the rules, as described in its DECISION, and if they wanted to do so in the future would likewise have to play by the rules, i.e., the NBMC Chapter 11 civil service provisions, the open involvement of the public, the professional advice of the Director of Human Resources, and the participation of the Civil Service Commission. The Court cannot fairly be read to have been authorizing the course of action that the Mayor and Council have followed because for the Court to have done so would have been for the Court to have abrogated illogically its preceding analysis and its forceful determination of bad faith in terminating Ms. Potkay on January 24.

IV. Coercive Contempt Is The Appropriate Remedy; Alternatively, This Court Should Supplement Its Prior Injunction.

Defendants' actions have purposefully obstructed this Court's D & O, continued their pattern of bad faith against Ms. Potkay, and made her position impotent and her employment impossible. (Potkay 2nd Aff. ¶¶ 18, 20, 23 and 24.) It is clear that defendants intend to abolish her position and terminate her employment. (Potkay 2nd Aff. ¶¶ 17-24 and Exs. 13-15.) 18 U.S.C. §401(3) allows this Court to use its contempt power as civil authority that "… intend[s] to coerce…" for prospective compliance. Both imprisonment and a fine may be imposed to achieve these results. The test to determine the nature of the contempt is to ask "…what does the Court primarily seek to accomplish…?" Shillitani v. United States, 384 U.S. 364, 370 (1966). These principles have been applied in the

18

Seventh Circuit and are applicable here, as explained in, e.g., <u>Warehouse Mail Order, Office, Technical and Professional Employees, Local 743 v. Columbia Rustproof, Inc.</u>, 550 F. Supp. 73, 74-77 & nn. 4 and 5 and cases cited (N.D. Ill. 1982). Here, plaintiff seeks Court coercion of defendants to cease their bad faith diminution of Ms. Potkay's position and to return her to her job as defined in Exhibit 1 to her original AFFIDAVIT, the job from which she has been terminated. Defendants have abused the reorganizational exemption allowed them by this Court's D & O and undermined the Court's restoration and reinstatement injunction. It is now clear that defendants have fully stepped into the attack on the person condemned by <u>Bellaver</u>, <u>supra</u>, D & O at p.17, and have engaged so plainly in bad faith that they must be coerced so that Ms. Potkay can be returned immediately and fully without interference to her office and position at City Hall. A fine to enforce the Court's D & O should be set in the amount of $1000.00 per day, and Ms. Potkay's attorney's fees for this MOTION should be allowed. The fine should further be directed against any attempt by Executive Budget or otherwise to terminate Ms. Potkay. If for some reason this Court should determine that the contempt sanction is inappropriate, then this Court should supplement its D & O of July 24 to require Ms. Potkay's immediate and full return to her office and position at City Hall and to prohibit any further interference in her employment. In that event, the Court should also enjoin any further purported reorganization by the defendants by whatever means as impermissible and permanently tainted by the defendants' continuing bad faith.

19

Respectfully submitted,

/s/ Walter F. Kelly
Walter F. Kelly
State Bar No. 1012283
Email: attywfkelly@hotmail.com
WALTER F. KELLY, S.C.
Attorney for Plaintiff
222 East Erie Street, Suite 210
Milwaukee, WI 53202
Ph:     414-271-6989
Fax:    414-271-8442